834 F.2d 355
 56 USLW 2331, Prod.Liab.Rep.(CCH)P 11,598
 Betty Jane LUZADDER, Executrix of the Estate of David P.
Luzadder, Deceased,
v.
DESPATCH OVEN COMPANY and Eclipse Inc.
v.
BROCKWAY, INC., a corporation; Honeywell, Inc.
Appeal of Betty Jane LUZADDER.
 Nos. 87-3030, 87-3142.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 10, 1987.
Decided Nov. 27, 1987.
Rehearing and Rehearing In Banc Denied Dec. 18, 1987.
 
 Lawrence R. Chaban (argued), Kenneth J. Yablonski, Yablonski, Costello and Leckie, Washington, Pa., for appellant.
 Vincent A. DeFalice (argued), Timothy J. Burdette, Patrick R. Riley, Egler, Anstandig, Garrett & Riley, Pittsburgh, Pa., for Despatch Oven Co.
 Kim R. Bobrowsky (argued), Law Offices of Robert G. Simasek, Pittsburgh, Pa., for Eclipse, Inc.
 Gregory F. Buckley (argued), Louis C. Long, Louis B. Loughren, Meyer, Darragh, Buckler, Bebenek and Eck, Pittsburgh, Pa., for Honeywell, Inc.
 Before SLOVITER, STAPLETON, Circuit Judges, and BROTMAN,* District Judge.
 OPINION OF THE COURT
 BROTMAN, District Judge:
 The present appeal calls upon this court to interpret a Pennsylvania statute of repose, 42 Pa.Cons.Stat.Ann. Sec. 5536 (Purdon 1981), which extinguishes certain actions arising out of defects in improvements made to real property not commenced within twelve years of the making of such improvements. The district court below granted summary judgment in favor of appellees Despatch Oven Company, Eclipse, Inc., and Honeywell, Inc., determining that plaintiff's claim was barred by Sec. 5536. Because we conclude that these defendant manufacturers do not fall within the class of persons sought to be protected by Pennsylvania's repose statute, we reverse the district court's grant of summary judgment.
 I.
 This action arises out of an accident which occurred on December 2, 1980 at the Brockway Plant, owned by Brockway Glass Company ("Brockway"), in Washington, Pennsylvania. Appellant's husband, David Luzadder, was injured when a natural gas fired furnace ("the oven") exploded. This oven was manufactured by Despatch Oven Company ("Despatch") and contained component parts manufactured by co-defendant Eclipse, Inc. ("Eclipse") and third-party defendant Honeywell, Inc. ("Honeywell"). The oven was sold to Brockway in March, 1965 and Brockway installed it for use in its glass molding operation.
 As a result of the December, 1980 accident, appellant's husband suffered severe injuries. Appellant and her husband filed suit against Despatch and Eclipse in December, 1981. In May, 1982, appellant's husband committed suicide. Appellant amended her complaint to include a wrongful death claim, alleging that her husband's suicide was the result of a post-traumatic syndrome.
 Eclipse filed a third-party complaint against Honeywell in June, 1983. Honeywell filed a crossclaim against Eclipse. Plaintiff asserted no claim against Honeywell.
 Motions for summary judgment, Fed.R.Civ.P. 56, on the basis of Pennsylvania's Statute of Repose, 42 Pa.Cons.Stat.Ann. Sec. 5536, were filed by Despatch, Eclipse and Honeywell on February 4, 1986. These motions were granted in December, 1986, 651 F.Supp. 239. Appellant then moved for sanctions under Fed.R.Civ.P. 11 against Despatch and Eclipse, claiming that these parties should have raised the Sec. 5536 defense earlier in the proceedings. Eclipse had raised this defense in its answer while Sec. 5536 had not been raised by Despatch in its pleadings. The motion for sanctions was denied. Appellant then filed this appeal, challenging both the grant of summary judgment and the denial of sanctions.[1]
 II.
 (A) Whether 42 Pa.Cons.Stat.Ann. Sec. 5536 is a Statute of Limitations or a Statute of Repose?
 Appellant argues that Sec. 5536[2] is a waivable statute of limitations, and not a non-waivable statute of repose. Thus, appellant urges, appellee Despatch waived any defense provided by Sec. 5536 by not raising it in its pleadings.
 Section 5536, which went into effect in 1978, is a substantial reenactment of Pa.Stat.Ann. tit. 12, Sec. 65.1 (repealed).[3] Nonetheless, while the substance of the provisions appears to have remained the same, the legislature did modify the language of Sec. 65.1 in enacting Sec. 5536.
 The limiting language of Sec. 65.1 reads "no action ... shall be brought ... more than twelve years after completion of such an improvement" while the parallel language of Sec. 5536 is "a civil action ... must be commenced within twelve years after completion of construction of such improvement." Appellant concedes that the predecessor statute, Sec. 65.1, was a non-waivable statute of repose. Appellant, however, points to the changes in statutory language in arguing that Sec. 5536 is a waivable statute of limitations.
 Initially, it should be noted that, while the Pennsylvania Supreme Court has yet to characterize Sec. 5536 as either a statute of limitations or a statute of repose, the weight of precedent in Pennsylvania's lower courts goes decidedly against appellant's interpretation. See Fetterhoff v. Fetterhoff, 354 Pa.Super. 438, 512 A.2d 30, 32 (1986) ("Since this [Sec. 5536] is a statute of repose, the liability is extinguished upon passage of the twelve years and it is a non-waivable right, contrary to a statute of limitations, which is waived, if not alleged, in a responsive pleading."); Catanzaro v. Wasco Products, Inc., 489 A.2d 262, 264, 339 Pa.Super. 481, (1985); Mitchell v. United Elevator Co., Inc., 290 Pa.Super. 476, 434 A.2d 1243 (1981). In fact, appellant cites no Pennsylvania caselaw which supports her position. Furthermore, federal district courts which have interpreted this provision have unquestioningly held that Sec. 5536 is a statute of repose. Springman v. Wire Machinery Corporation of America, 666 F.Supp. 66, 67 (M.D.Pa.1987); Vasquez v. Whiting Corporation, 660 F.Supp. 685, 686 (E.D.Pa.1987); Facenda v. Applied Powers, Inc., No. 87-0980, slip op. (E.D.Pa. July 17, 1987); Gnall v. Illinois Water Treatment Co., 640 F.Supp. 815, 817 (M.D.Pa.1986).
 Above and beyond the weight of this authority, we find plaintiff's argument unpersuasive. That the Pennsylvania Legislature would make such a substantial change in the nature and effect of this statute through a seemingly inconsequential alteration of its language, and in the absence of any legislative debate,[4] is a conclusion which is not easily, nor do we believe, prudently reached.
 Additionally, Sec. 5536, which bars actions not brought within twelve years of the making of the improvement to real property, is drafted not as a statute of limitations but as a statute of repose. Statutes of repose, unlike most statutes of limitations, start to run, as does Sec. 5536, at the completion of certain conduct by the defendant. Whereas a claim under a statute of limitations accrues when a plaintiff either suffers or discovers the harm complained of, "[s]tatutes of repose by their nature [ ]impose on some plaintiffs the hardship of having a claim extinguished before it is discovered, or perhaps before it even exists...." W. Keeton, Prosser and Keeton on Torts Sec. 30, p. 168 (5th Edition 1984). Such is the function of Sec. 5536.
 Therefore, Sec. 5536 being a statute of repose, plaintiff's claim against Despatch, if the statute applied to that claim, was extinguished in 1977--twelve years after the Despatch oven was installed at the Brockway plant and four years before this suit was filed. Despatch's failure to raise the Sec. 5536 defense in its answer would not revive this claim.
 The court must next determine whether Sec. 5536 applies to the claims asserted by plaintiff. In order for Sec. 5536 to be applicable, it must be found (1) that appellees are within the class of persons protected by statute; and (2) that the products manufactured by appellees are improvements to real property within the meaning of Sec. 5536.[5]
 (B) Whether Defendants Are Within the Class of Persons Protected by Section 5536.
 The district court, after determining that the oven was an improvement to real property, concluded that Sec. 5536 applied to Despatch as the manufacturer of the oven and to Eclipse and Honeywell as manufacturers of component parts of the oven. A conflicting result, however, has been reached by two other district courts in opinions issued after the district court rendered its decision in this case. These later cases held that Sec. 5536 does not bar actions against a manufacturer who plays no role in the installation of a product. Vasquez v. Whiting Corp., 660 F.Supp. 685 (E.D.Pa.1987) (Cahn, J.); Springman v. Wire Machinery Corp. of America, 666 F.Supp. 66 (M.D.Pa.1987) (Muir, J.).[6]
 
 
 1
 On the other hand, recent Pennsylvania Superior Court decisions have given a more expansive interpretation to Sec. 5536. See, e.g., Catanzaro, 339 Pa.Super. 481, 489 A.2d 262 (1985) (manufacturer of skydome protected under repose statute); Mitchell, 290 Pa.Super. 476, 434 A.2d 1243 (1981) (manufacturer of elevator system protected by Sec. 5536).[7] However, as with the issue of what constitutes an improvement under Sec. 5536, the Pennsylvania Supreme Court has yet to speak on the scope of coverage of Sec. 5536. In the absence of such a pronouncement, a federal court sitting in diversity must predict how the Supreme Court would decide the issue. McGowan v. University of Scranton, 759 F.2d 287, 291 (3d Cir.1985). In so predicting, decisions from a state intermediate appellate court become "presumptive evidence, rather than absolute pronouncement of state law." National Surety Corp. v. Midland Bank, 551 F.2d 21, 30 (3d Cir.1977).
 
 
 2
 In first looking at the language of Sec. 5536, it is evident that manufacturers are not covered under the plain meaning of the statute. Section 5536 speaks in terms of "any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property...." Nowhere does the statute speak of the manufacture of an improvement.
 
 
 3
 Judge Muir noted in Springman that "[t]he history of [Sec. 5536] reveals that the statute was passed as a result of the lobbying efforts of the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors of America and meant to protect these groups of people--not manufacturers." 666 F.Supp. at 69. See also, The Variety, Policy and Constitutionality of Product Liability Statutes of Repose, 30 Am.U.L.Rev. 579, 587 (1981); Limitation of Action Statutes for Architects and Builders--Blueprints for Non-Action, 18 Cath.U.L.Rev. 361, 365 (1969).[8]
 
 
 4
 We believe that manufacturers have, for good reason, been excluded from the protection of Pennsylvania's statute of repose. Application of Sec. 5536 to manufacturers would cut the heart out of Pennsylvania's product liability law, by immunizing any manufacturing company fortunate enough to have its product turned into an improvement to real property. As Judge Cahn explained in Vasquez,
 
 
 5
 The policy underlying Sec. 402A of the Restatement (Second) of Torts (1965), which has been adopted as the law of Pennsylvania, ..., is to protect and compensate victims of defective products while forcing suppliers of such products to bear the risk of loss.... These policies would be undermined if manufacturers of products were able to claim that the statute of repose relieves them of liability merely because their products have somehow become "improvements to real property."
 
 Id. at 689.[9]
 
 6
 To expand the scope of the repose statute to cover manufacturers would also work to draw an artificial distinction between manufacturers of different products, creating a situation where the maker of a furnace would be protected by the provisions of Sec. 5536, while the maker of an automobile would not be. No policy or reason can be cited to justify such incongruity. In fact, the arbitrariness of such a distinction has been recognized by the Pennsylvania Supreme Court, albeit in a different context than the one presented.
 
 
 7
 In Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 68 A.2d 517 (1949), the Pennsylvania Supreme Court discussed the seminal case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), in which the New York Court of Appeals held that a manufacturer owes a duty of reasonable care to third persons, even though there exists no contract between them, and that therefore the manufacturer is liable in tort to such persons for injuries caused by the manufacturer's defective products. Id. This principle formed the basis for modern-day products liability law.
 
 
 8
 In Foley, the Pennsylvania Supreme Court applied this principle of tort law to improvements to real property, rejecting the argument that MacPherson should only be applied to chattels.
 
 
 9
 There is no logical basis for such a distinction, and it would obviously be absurd to hold that a manufacturer would be liable if negligent in building a small, readily movable tank which would undoubtedly be a chattel, but not in building an enormously large and correspondingly more potentially dangerous a one that legalistically was classified as realty. The principle inherent in the MacPherson v. Buick Motor Co. case and those that have followed it is that one who manufactures and delivers any article or structure with the knowledge that it will be subject to use by others, must, for the protection of human life and property, use proper care to make it reasonably safe for such users and for those who may come into its vicinity; certainly the application of that principle cannot be made to depend upon the merely technical distinction between a chattel and a structure built upon the land.
 
 
 10
 68 A.2d at 533.
 
 
 11
 As this court has previously noted, changes in a state's "basic tort law should emanate from the Pennsylvania Supreme Court and not the Superior Court." Vargus v. Pitman Manufacturing Co., 675 F.2d 73, 76 (3d Cir.1982). While we recognize that several of the district courts have suggested that the Supreme Court of Pennsylvania will follow the apparent trend developing in the lower courts of that state which would extend the scope of the statute of repose to cover manufacturers of improvements to real property, we are compelled to disagree. Therefore, the order of the district court granting summary judgment for defendants will be reversed.
 
 III.
 
 12
 Appellant seeks sanctions against Despatch and Eclipse for their failure to raise the Sec. 5536 defense sooner. Eclipse raised the defense in its answer. Despatch did not. The district court found no violation of Fed.R.Civ.P. 11 by either appellee.
 
 
 13
 Review of the denial of a motion for sanctions is subject to the abuse of discretion standard. Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 540 (3d Cir.1985). There is no indication of such an abuse of discretion in the record.
 
 
 14
 Appellant argues that Despatch and Eclipse sat on their rights, and went through hundreds of hours and pages of discovery, solely to increase costs to appellant and to harass her. This argument is untenable. Clearly, the applicability of the statute of repose in this type of action is far from being a well-settled area of the law. Despatch and Eclipse cannot be said to have been objectively unreasonable in not raising Sec. 5536 as a defense earlier than they did. Thus, the district court's denial of sanctions should be affirmed.
 
 
 15
 STAPLETON, Circuit Judge, dissenting.
 
 
 16
 Finding the Superior Court's consistent reading of Section 5536 consistent both with its text and all cited precedent of the Supreme Court of Pennsylvania, I feel constrained by Erie and its progeny to hold that a manufacturer and designer of an oven intended for incorporation into the structure of a glass molding plant is protected by statute. Since I agree with my colleagues that Section 5536 is a statute of repose and that the district judge did not abuse his discretion in denying sanctions, I would affirm the district court with respect to the claims against Despatch.
 
 
 17
 Given the rationale of the Superior Court in Catanzaro v. Wasco Products, Inc., 339 Pa.Super. 481, 489 A.2d 262 (1985) and Mitchell v. United Elevator Co., Inc., 290 Pa.Super. 476, 434 A.2d 1243 (1981), I believe the disposition of the claims against Eclipse and Honeywell should turn upon whether their component parts were specifically designed for this purpose or were shelf items intended for many purposes and used here only because of a choice by Despatch, an issue that it would serve no purpose to pursue further here.
 
 
 
 *
 Honorable Stanley S. Brotman, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 Third-party defendant Honeywell argues that Eclipse, the only party to assert a claim against Honeywell, did not file a cross-appeal in this action and therefore Honeywell must be dismissed from this lawsuit regardless of how this appeal is resolved. The court must reject this argument
 The granting by the district court of summary judgment in favor of Eclipse a fortiori required the granting of summary judgment on the third-party complaint against Honeywell. Firstly, Sec. 5536, when applicable, applies with equal force to third-party claims for contributions and indemnification. 42 Pa.Cons.Stat.Ann. Sec. 5536(a)(4). Secondly, in the absence of liability on Eclipse's part to the plaintiff, Honeywell owes no duty of contribution or indemnification to Eclipse. Therefore, to require Eclipse to preserve its contingent rights against Honeywell by filing a cross-appeal, the only possible grounds for which would be that the district court erred in finding Eclipse not liable to the plaintiff, would elevate form over substance and lead to an unjust result.
 
 
 [2]
 Section 5536 in pertinent part states:
 (a) General rule.--Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:
 (1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.
 (2) Injury to property, real or personal, arising out of any such deficiency.
 (3) Injury to the person or for wrongful death arising out of any such deficiency.
 (4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3).
 
 
 [3]
 Section 65.1 (repealed) states:
 No action (including proceedings) whether in contract, in tort or otherwise, to recover damages:
 (1) For any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,
 (2) For injury to property, real or personal, arising out of any such deficiency,
 (3) For injury to the person or for wrongful death arising out of any such deficiency, or
 (4) For contribution or indemnity for damages sustained on account of any injury mentioned in clauses (2) and (3) hereof shall be brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of such improvement more than twelve years after completion of such an improvement.
 
 
 [4]
 As noted in section II. (B) of this opinion, Sec. 5536 was enacted without legislative debate
 
 
 [5]
 Because we hold that none of the defendant manufacturers are within the class of defendants Sec. 5536 seeks to protect, we need not reach the question of whether the products manufactured by appellees constitute improvements to real property
 
 
 [6]
 Judge Muir had reached the same conclusion in an earlier case, Kovach v. The Crane Company, No. 82-0530, slip op. (M.D.Pa. May 18, 1983), where he held Sec. 5536 inapplicable to the manufacturer of a boiler
 
 
 [7]
 In addition to these Superior Court decisions, Judge Cohill is not the only federal district judge sitting in Pennsylvania who has applied Sec. 5536 to manufacturers. See Facenda v. Applied Powers, Inc., No. 87-0980, slip op. (E.D.Pa. July 17, 1987) (Newcomer, J.) (applying statute of repose to manufacturer of automobile body frame repair system); Gnall v. Illinois Water Treatment Co., 640 F.Supp. 815 (M.D.Pa.1986) (Conaboy, J.) (applying statute of repose to manufacturer of tanks used as part of water treatment system). In Gnall, Judge Conaboy discussed Judge Muir's 1983 Kovach decision at length, and suggested that, had Judge Muir the benefit of reading the Superior Court's decision in Catanzaro when he wrote the opinion in Kovach, Judge Muir "may well have come to a different result." Id. at 821. This proved not to be the case as evidenced by Judge Muir's decision in Springman
 
 
 [8]
 Furthermore, in Vasquez, Judge Cahn cites some legislative history of the predecessor statute to Sec. 5536, (there is no such history for Sec. 5536 itself), which supports Judge Muir's interpretation. One Mr. Mebus, in speaking in support of the statute, stated that it would "provide[ ] for protection from accusations of professional failure long after his engagement is complete." 660 F.Supp. at 688 n. 3. A Mr. Sesher, speaking in opposition to the bill, stated, "I have never been under the impression that undue harassment has occurred to contractors, architects or designers, so as to necessitate this type of legislation...." Id
 
 
 [9]
 The Pennsylvania Supreme Court offered, in dicta, a persuasive rationale for distinguishing between professional builders and designers and manufacturing companies for purposes of products liability law. "Suppliers who typically produce items by the thousands, can easily maintain high quality control standards in the controlled environment of the factory. A builder, on the other hand, can pre-test his design and construction only in limited ways--actual use in the years following construction is their only real test...." Freezer Storage, Inc. v. Armstrong Cork Co., 476 Pa. 270, 382 A.2d 715, 719 (1978)